# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01443-COA

MAGEN CHEYANNE WALLEY A/K/A MEGEN WALLEY        APPELLANT

v.

STATE OF MISSISSIPPI        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/14/2024 |
| TRIAL JUDGE: | HON. BURNICE WESLEY CURRY IV |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: STACY L. FERRARO |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JULIANNE KAY BAILEY |
| DISTRICT ATTORNEY: | EARL LINDSAY CARTER JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/28/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1. After a trial, a jury convicted Magen Walley of uttering forgery and identity theft for using David Cooley's personal information to create loan documents and take out debt in his name. On appeal, Walley argued that the trial court erred by prohibiting certain evidence from being proffered and limiting Walley's cross-examination of Cooley about an indictment for his alleged failure to re-register as a sex offender. This Court finds that the trial court did not abuse its discretion and affirms Walley's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2. Cooley took out two loans in 2021 from Harbor Loans. Walley was his loan officer

for both.  Cooley sent Walley, via Facebook Messenger, a picture of his driver's license and Social Security card as "proof of identify" for the loans.  Around the time of obtaining the loans, Cooley attempted a romantic relationship with Walley, which "didn't go far."

¶3.     In the fall or winter of 2022, Cooley received a call from a collections agent notifying him that he "had a debt" with Mississippi Title Loans.  Cooley went to Mississippi Title Loans to obtain copies of the loan documentation and signed a statement denying that he had opened that specific loan.  The loan documents evidenced that the loan was opened in June 2022, which coincided with the time that Walley was employed at Mississippi Title Loans. The loan documentation showed Cooley's name misspelled, the personal references were unknown to Cooley, the employer was for a business where Cooley had never worked, the monthly income was listed incorrectly, and the bank account was listed for a company where he had never opened an account.

¶4.     Cooley contacted the police about the loan.  After investigation, the loan was determined to be fraudulent.  The Hattiesburg Police Department interviewed Walley. Walley appeared with her attorney and provided the following written statement:

> I Magen Walley knew David Cooley before my arrest on December 30, 2022.  We have hung out at local Bars, casino's, and parties with mutual friends.  He has pursued a sexual & romantic relationship with me.  He's sent me flowers to my job & at home.  In June 2022[,] David Cooley contacted me needing some money for a upcoming surgery or hospital visit.  Over the phone I took his information with his permission, to help get him approved.  I do not remember any specifics to his loan.

¶5.     On February 29, 2024, Walley was indicted for uttering forgery under Mississippi Code Annotated section 97-21-59 (Rev. 2020) and identity theft under Mississippi Code

Annotated section 97-45-19 (Rev. 2020). On October 1, 2024, the State filed a motion in limine, arguing that Walley's counsel sought to introduce improper character evidence against Cooley. Specifically, the State sought to keep out a conviction against Cooley from DeSoto County and a civil debt collection "matter" against Cooley from Greene County.

¶6. Walley filed a response on October 4, 2024, stating that she intended to ask Cooley about a sexual battery conviction in DeSoto County, and if Cooley denied the conviction, then she "intends to introduce copies of the indictment and sentencing order." Further, Walley intended to question Cooley about the various addresses where he had previously resided, but failed to register, "pursuant to the sex offender registry requirements." Wally contended that the conviction was necessary to provide context for the line of questioning as to his addresses, which would challenge Cooley's veracity.

¶7. Regarding the debt-collection evidence, Walley stated that she had "no intentions of seeking to introduce the entirety of the documentation regarding the various collection matters filed against David Cooley[,]" but she did intend to inquire about them on cross-examination. Walley argued that the prior debt-collection matters would show:

A. David Cooley has a motive to accuse the Defendant of defrauding him because it is an easy method for him to avoid paying his lawfully contracted debt;

B. David Cooley had the intent to accuse the Defendant of defrauding him because he signed the loan contract by misspelling his name and not using his customary handwriting as he had done in previous loans that went into collections;

C. David Cooley prepared to accuse the Defendant of defrauding him by manipulating her into securing a loan for him through electronic communication with her so that he could mount a defense to any future collections efforts made against him;

D. David Cooley had knowledge of the loan process and the collection

3

efforts that would be made against him because of the past loans and collection efforts; and

E. David Cooley is the same person that took out past loans and defaulted on them.

Further, Walley stated that "several signatures on various items of paperwork that purport to be the signature of David Cooley" were written differently, and Walley might seek to cross-examine Cooley on that issue.

¶8. On October 11, 2024, the trial court granted the State's motion in limine by written order. On October 14-15, 2024, the case went to trial before a Forrest County Circuit Court jury. Hattiesburg detective Gareth Wood was the first witness to testify. He explained the process of the Hattiesburg Police's investigation. An area manager for Mississippi Title Loans testified to the company's procedures for creating loan documentation and "discrepancies or oddities" in the fraudulent loan paperwork.[1]

¶9. On the morning of the second day of trial, before the jury entered the courtroom, Walley's counsel requested permission to introduce a redacted exhibit that only displayed Cooley's signature and was aimed at proving whether or not Cooley actually signed the loan documents. Cooley's signature was allegedly written differently on each of the different pages. The document, as described by defense counsel, was "a file from Wayne County, cause number 21-71-K, alleging Mr. Cooley failed to register as a sex offender[.]"

¶10. The judge reviewed the document and denied the request, reasoning that defense counsel was attempting to "go beyond the boundaries set forth in the" ruling on the motion

---

[1] Because Walley does not challenge the sufficiency of the evidence on appeal, all the details of Detective Wood and the area manager's testimonies will not be set forth and are only briefly summarized to the extent necessary to address the issues in this appeal.

4

in limine when variations of Cooley's signature could be evidenced by other documentation, such as a "driver's license [or] voter registration card." Further, the judge found that he "could read through half of them what the document was."

¶11.    After this ruling, the jury entered the courtroom, and Cooley took the stand to testify. At the close of cross-examination, defense counsel requested an opportunity to make a proffer of evidence outside the presence of the jury using Cooley. The jury was excused for lunch, and a discussion of the evidence ensued. The State noted that Walley was attempting to proffer "the redacted documents." The judge granted the defense's request.

¶12.    Three exhibits were introduced for identification purposes only: Exhibit 15: a Wayne County indictment for failing to re-register as a sex offender, Exhibit 16: a document showing Cooley sued a correctional officer in 2016, and Exhibit 17: a sexual battery conviction from DeSoto County.[2] At the introduction of Exhibit 15, Walley's counsel asked Cooley if he was indicted for failing to register as a sex offender, and Cooley admitted to the indictment and that he had signed certain pages within the exhibit. This Court notes that Exhibit 15 was not just an indictment but more akin to a file that contained the entire record of that case, including an order of nolle prosequi for the indicted charge. Walley's counsel proceeded to introduce Exhibits 16 and 17, asking Cooley if he recognized his signatures on each of the relevant pages.

¶13.    Then, Walley's counsel attempted to introduce Exhibit 18, which was described as "an indictment of Wayne County for a David Early Cooley for a shooting." Cooley denied that

---

[2] In the appellate record, these exhibits are only partially redacted.

the indictment was against him, and the State objected to the introduction of Exhibit 18. The State objected for a lack of foundation showing that this Cooley, who was the alleged victim of Walley, was the same Cooley that was indicted for the shooting. The judge sustained the objection and refused Walley's counsel's attempt to enter the indictment into evidence.

¶14. The State then objected to the evidence of "aggravated assault" because it was "not a redacted copy," and the State had agreed to use only the redacted copies for evidence of Cooley's signature. Walley's counsel argued that all the evidence needed to be submitted into the record for an appeal "to allow a reviewing court to look at the document and determine whether" the trial court had correctly ruled on the motion in limine. The judge stated, "There is enough discussion in the record that a reviewing court can glean from what the discussion has been at the hearing and the Motion in Limine." The judge then directed that Exhibit 18 was to be removed from the record.[3]

¶15. Walley's counsel then proceeded to introduce for identification Exhibits 19 and 20, which were two separate debt-collection suits against Cooley. The State objected to both stating that "[t]his has nothing to do with signatures. We've handled this in the Motion in Limine. They are default judgments." The objections were sustained, and the exhibits were not allowed. Cooley was excused, and the trial resumed. Walley did not testify.

¶16. Walley was convicted by the jury of both counts. On November 14, 2024, the trial court entered the final judgment and sentence.[4] Walley was sentenced on Count I to five

---

[3] Exhibit 18 was never included in the record.

[4] At the sentencing hearing the State introduced evidence that the money from the fraudulent loan had been placed on a NetSpend card that was used at the Perry County Tax

years in the custody of the Mississippi Department of Corrections, with all five years of the sentence suspended and Walley being placed on five years of post-release supervision. For Count II, Walley was sentenced to ten years in the custody of the Mississippi Department of Corrections, with five years of the sentence suspended, leaving five years to serve and the remainder of five years on post-release supervision. Walley filed a post-trial motion, which was denied, and then appealed.

## ISSUES PRESENTED

¶17. On appeal, Walley's arguments are best summarized as:

    I.    Whether the circuit court erred by refusing to allow Walley to present evidence probative of her theory of defense or proffer the evidence for the Court's review.

    II.    Whether the circuit court erred by not allowing Walley to cross-examine Cooley about an alleged failure to re-register as a sex offender.

## ANALYSIS

**I.    Whether the circuit court erred by refusing to allow Walley to present evidence probative of her theory of defense or proffer the evidence for the Court's review.**

¶18. We review the trial court's ruling on this issue for abuse of discretion. *Ross v. State*, 954 So. 2d 968, 992 (¶44) (Miss. 2007) ("The admissibility of evidence rests within the discretion of the trial court, and reversal is appropriate only when a trial court commits an abuse of discretion resulting in prejudice to the accused." (citing *Irby v. State*, 893 So. 2d 1042, 1047 (¶20) (Miss. 2004))).

¶19. Walley contended that the trial court erred by not allowing a proffer for the

Collector's office to pay car tags for a car that was registered to Walley's address.

7

introduction of what she describes as (1) Exhibit 18 - "an indictment in Wayne County for a shooting," (2) Exhibit 19 - "a lawsuit wherein Credit Acceptance of America sued Cooley for a debt owed[,]" and (3) Exhibit 20 - "a lawsuit wherein Wesley Health System sued Cooley for a debt owed." The trial court sustained the State's objection and did not allow the three exhibits to be marked for identification. In support of her argument, Walley relied on the following excerpt from *Kidd v. State*, 258 So. 2d 423, 428 (Miss. 1972):

> Regardless of whether or not the testimony is irrelevant, immaterial and unnecessary, the defendant and the state have the sacred right of appeal to this Court. The corollary thereof is the right to make their respective records and no court should deny a litigant the right to make his record so that we will have before us all issues of fact as well as issues of law for review. This in itself is error sufficient to justify a reversal of this case.

*Id.* Walley argued that when the right to make a proffer is denied, "this Court has no alternative but to reverse and remand for a new trial." *Jones v. State*, 306 So. 2d 57, 59 (Miss. 1975).

¶20. "The failure of the trial judge to permit counsel for the appellant to make his record . . . is a grievous error." *Kidd*, 258 So. 2d at 428. "The right to preserve testimony through an appropriate offer of proof is essential to insure justice and fairness[,]" especially "in criminal trials where the broadest latitude is permitted on cross-examination." *Jones*, 306 So. 2d at 58. This Court, again, underscores the importance of allowing counsel to make a proffer of evidence, and we again emphasize that "[r]efusing to allow a defendant to make a proffer at all is reversible error." *Dille v. State*, 334 So. 3d 1162, 1180 (¶46) (Miss. Ct. App. 2021). This Court expresses grave concern and caution to trial courts for limiting a party's ability to proffer evidence. Most of the time, this Court cannot conduct its appellate

8

review without the necessary proffer at trial.

¶21.    However, the Supreme Court has stated that "[i]t is not necessary that the parties place in the record every detail of what their proof would have shown." *Murray v. Payne*, 437 So. 2d 47, 54 (Miss. 1983). All that is necessary is for the party seeking to offer the excluded evidence to "make a clear record showing to us that there is substance to his point, that on reversal and remand there is a substantial likelihood that he will be able to offer evidence which may reasonably be expected to have an impact on the outcome of the case." *Id.*; *see Heidel v. State*, 587 So. 2d 835, 844 (Miss. 1991). "[T]otal and complete details of the proffered but excluded testimony" is not required. *Murray*, 437 So. 2d at 55; *see* MRE 103(a)(2). This Court finds that the substance of the evidence is apparent from the discussion in the record and the trial court's ruling on the motion in limine.

¶22.    Relevant to this inquiry is the Court's ruling in *Dille v. State*, 334 So. 3d 1162 (Miss. Ct. App. 2021). In *Dille*, the defendant sought to cross-examine one of the police officers who testified against him about why the officer had been placed on administrative leave. *Id.* at 1179 (¶41). The circuit court found that line of questioning to be irrelevant, but allowed Dille to make a proffer. *Id.* at (¶42). The officer testified that he was under on-going "administrative investigation" and that "he had not been officially advised about why he was placed on leave." *Id.* Upon further questioning, the officer stated he was placed on leave "due to an allegation" but would not provide any further details. *Id.* at (¶43). Dille requested the court to order the officer to disclose the "nature of the allegation" but the judge refused. *Id.*

9

¶23. Dille argued on appeal that he was denied "his right to make a full proffer[.]" This Court recognized the importance of a full proffer but nevertheless affirmed the circuit court's ruling. *Id.* at 1181 (¶48). This Court reasoned that the officer stated he did not know the reason for the administrative leave, so "the most any additional proffer could have established would have been an unsubstantiated allegation." *Id.* at (¶51). Further, "there was no logical reason why the jury would have given less weight to [the officer's] testimony about the night had they been aware that someone had accused [the officer] of some action in an unrelated matter six years [after Dille shot the victim]." *Id.* Accordingly, the Court found that the circuit court did not abuse its discretion by limiting Dille's proffer. *Id.*

¶24. In the present case, Exhibit 18 was an indictment for a shooting in Wayne County that Cooley denied was related to him.[5] The State argued that there was no proof that "the person indicted was actually" Cooley. At the hearing on the motion in limine, the State argued that the Mississippi Department of Corrections and Cooley swore the charges were against a different David Cooley and that no evidence showed that the charges were related to Cooley. The trial court ruled that under Mississippi Rule of Evidence 401, the indictment was irrelevant.

---

[5] There is some discrepancy in the record as to whether this exhibit was an indictment or a conviction. Walley described this excluded exhibit as "an indictment in Wayne County for a shooting which Cooley denied." At the hearing on the motion in limine, the trial judge asked the State whether there was a conviction for the shooting, and the State said, "No. There is a conviction for aggravated assault that [MDOC] and my client tells me has nothing to do with him." The State then proceeded to discuss whether a conviction would be admissible. Further, the State used contradictory terms in its brief. This Court will follow the appellant's representation of the exhibit, which appears to clearly show Walley attempted to introduce an indictment.

¶25. "In general, 'one accused of a crime has the right to broad and extensive cross-examination of the witnesses against him, and especially is this so with respect to the principal prosecution witness.'" *Ambrose v. State*, 254 So. 3d 77, 101-02 (¶56) (Miss. 2018) (quoting *Suan v. State*, 511 So. 2d 144, 148 (Miss. 1987)). However, the evidence of a shooting or a felony conviction that was never proven to have been committed by Cooley was wholly unrelated to whether Walley used Cooley's name and information to create fraudulent loans. Cooley and the State argued that the "Cooley" in the indictment was not the Cooley testifying and that Cooley had no involvement in the felony indictment for a crime he did not commit. This Court finds that the trial court did not abuse its discretion by excluding an indictment, under Mississippi Rule of Evidence 401, for "unsubstantiated allegations" that may or may not have been related to the victim. *See Dille*, 334 So. 3d at 1182 (¶¶50-52) (noting a distinct difference between unsubstantiated bad acts and prior bad acts).

¶26. Exhibits 19 and 20 would have been two debt-collection default judgments against Cooley. Walley argued that these civil judgments show Cooley's motive, intent, and preparation to accuse Walley of fraud, and that "Cooley is the same person that took out past loans and defaulted on them[.]" The trial judge excluded the judgments under Mississippi Rule of Evidence 608 and the balancing test in Mississippi Rule of Evidence 403.

¶27. The trial court reasoned at the hearing that "I wouldn't say that not paying your bills is something that goes toward your ability to tell the truth or not." Walley's counsel responded with, "Well, in this particular instance I believe it does. He didn't pay his bills in the past, he didn't pay this one, so he claimed it was fraud instead of just paying the bill that

11

was lawfully incurred."

¶28. Walley argued that the debt collection judgments prove Cooley's motive, intent, and preparation, which was "relevant and probative of Walley's theory of defense." Under Rule 404(b), evidence of crimes, wrongs, or other acts is admissible for those reasons, although still subject to the Rule 403 balancing test. *Boggs v. State*, 188 So. 3d 515, 522 (¶19) (Miss. 2016) (citing *Derouen v. State*, 994 So. 2d 748, 756 (¶18) (Miss. 2008)); MRE 404(b) ("This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, . . . [or] preparation[.]"). The trial court reasoned that in addition to being more prejudicial than probative, the judgments were "irrelevant under 401 as the Defendant has failed to make any showing that there is a tie between the civil judg[]ment and the bad debts with the current charge before the court."

¶29. Walley's theory of defense was that Cooley had taken out the loans and then claimed that Walley had fraudulently taken out the loans in his name. Walley's trial counsel represented to the trial court that they were attempting to "prove a theory of the case, which [was] that a two-time at least convicted felon has lied his way through his life. He's been trying to cheat on a girlfriend with Ms. Walley, that he's not paid his bills, and then when he gets upset with her," he takes out a loan and blames her for the debt. Walley introduced testimony that supported her theory by extensively inquiring into Cooley's spurned attempts at a romantic connection with Walley and questioning whether Cooley had other debts, i.e., medical bills, that he was struggling to pay. Further, Walley's written statement, which was highly favorable to her defense, was admitted into evidence. This Court finds that the

12

exclusion of the default judgments did not prevent Walley from presenting her theory of the case, and the trial court did not abuse its discretion by finding that the judgments were more prejudicial than probative. This evidence was irrelevant to Cooley's character for truthfulness, and irrelevant to whether Walley falsified loan documents to take out debt in Cooley's name.

II. **Whether the circuit court erred by not allowing Walley to cross-examine Cooley about an alleged failure to re-register as a sex offender.**

¶30. Walley argued that the trial court erred by prohibiting her from questioning Cooley about an indictment under Mississippi Code Annotated section 45-33-31 (Rev. 2020) for an alleged failure to re-register as a sex offender. Walley intended to use this evidence to impeach Cooley by showing that Cooley "lives at a completely different address than the address he registered on August 26, 2024." Again, this Court reviews the trial court's ruling for abuse of discretion. *Ross*, 954 So. 2d at 992 (¶44) (citing *Irby*, 893 So. 2d at 1047 (¶20)).

¶31. The issue is directed to the trial court's ruling on Exhibit 15, which was introduced into the record for identification purposes only and by a proffer. The exhibit contains an indictment under section 45-33-31 for the failure to "re-register every ninety (90) days with the Mississippi Department of Public Safety, after having been previously convicted on November 2, 2010 of the sex offense of Sexual Battery[.]" The exhibit also includes an order of nolle prosequi dismissing the charge.

¶32. Walley argued that under *White v. State*, 785 So. 2d 1059, 1062 (Miss. 2002), and *Scott v. State*, 396 So. 3d 515 (Miss. Ct. App. 2024), the evidence was admissible to impeach

13

the State's witness. However, *White* and *Scott* both concern the introduction of prior **convictions** under Rule 609(a)(1), not indictments. For this reason, *White* and *Scott* are completely unrelated to the inquiry of this Court, because this Court can clearly discern from the unredacted pages of Exhibit 15 that the State did not pursue Cooley's alleged failure to re-register to a criminal conviction. The indictment is nothing more than an "unsubstantiated allegation" which was within the trial court's discretion to exclude. *Dille*, 334 So. 3d at 1182 (¶51).

¶33. Instead, similar to the analysis of the Wayne County indictment above, the trial court subjected the evidence to review under Rules 608, 403, and 401 and determined that the evidence "serve[d] as improper character evidence and would serve to mislead and confuse the jury." The parties instead stipulated to the fact that Cooley was a felon.[6] Cooley was convicted of the sex offense charged in the indictment. Walley wanted to use the indictment for failure to re-register to show that Cooley lived at an address that was different from his registered address on the sex offender registry. This Court finds that the trial court did not abuse its discretion in excluding an indictment for Cooley's alleged failure to re-register as a sex offender. Knowledge of Cooley's status as a sex offender and allegations that he potentially was in violation of his sex offender requirements had the potential to be highly inflammatory for a jury. Further, the facts of the indictment were entirely unrelated to

---

[6] In the ruling on the motion in limine, the trial court stated that "[d]uring argument, the State conceded to mentioning the fact the Defendant was a convicted felon. The [c]ourt will allow the State and the Defendant to stipulate to this fact; however, this [c]ourt excludes any evidence at trial and in voir dire of the nature of the prior conviction of the complaining witness."

whether Walley used Cooley's name and information for fraudulent purposes.

**CONCLUSION**

¶34. This Court finds that the trial court did not abuse its discretion by making the evidentiary rulings challenged by Walley on appeal. Although this Court recommends trial courts allow defendants to make a full proffer of their evidence, this Court could deduce from the record the trial court's ruling on the evidence that was excluded from the proffer sought by Walley's trial counsel. This Court finds that the trial court did not abuse its discretion by prohibiting Walley from introducing an unrelated indictment for a shooting and two debt-collection actions. Additionally, this Court finds that the trial court did not err by prohibiting Walley from cross-examining Cooley on an indictment that was later dismissed for failure to re-register as a sex offender. This Court affirms Walley's convictions and sentences.

¶35. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**